[No. 9856.   Department One.   May 25, 1912.]

DONALD R. CAMERON, *Respondent*, v. STACK-GIBBS LUMBER COMPANY *et al.*, *Appellants*.[1]

TRIAL—VERDICT—CONSTRUCTION. The language of a verdict or special finding is to be liberally construed with a view of arriving at the intent of the jury.

TRIAL—VERDICT—SPECIAL FINDINGS—INTENT—EXPLANATION. The statement of the foreman of the jury, before discharge and in the presence of the jury, may be received by the court to explain the intent of the jury in answering special interrogatories.

TRIAL—VERDICT—SPECIAL FINDINGS—INCONSISTENCY. Under the rule that a special verdict should be given a construction that will support the general verdict, in an action on the joint contract of a corporation and two of its officers, a general verdict against all the defendants is not necessarily inconsistent with negative answers to special interrogatories asking whether the plaintiff entered into the contract intending at the time to contract with the officers individually, where the foreman of the jury explained that the questions were answered "no" in order to hold the officers individually responsible with the company, and it was evident that they understood that an affirmative answer would have held them *solely* responsible.

APPEAL—REVIEW—HARMLESS ERROR—INSTRUCTIONS. In an action upon a joint contract in which there was a verdict against all the defendants, it is harmless error to give instructions permitting a joint or several judgment when no several contract had been pleaded or proved.

APPEAL—REVIEW—HARMLESS ERROR—INSTRUCTIONS—CORPORATIONS —REPRESENTATIONS. It is not prejudicially erroneous to instruct that if certain facts were true, officers of a corporation would have implied authority to contract for the company, instead of stating that the facts would be *prima facie* evidence of their authority, where the officers' denial of authority amounted only to a denial of any formal conferring of authority, and the facts referred to consisted of the only evidence in the case upon the question of the apparent authority of the officers.

WITNESSES—CROSS-EXAMINATION—DISCRETION. It is not an abuse of discretion to curtail the cross-examination of witnesses as to matters amply covered by previous questions in the cross-examination.

[1] Reported in 123 Pac. 1001.

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered March 8, 1911, upon the verdict of a jury rendered in favor of the plaintiff, in an action on contract. Affirmed.

*Reese H. Voorhees*, for appellants.

*Robertson & Miller*, for respondent.

PARKER, J.—The plaintiff, Donald R. Cameron, commenced this action in the superior court for Spokane county to recover from the defendants, Stack-Gibbs Lumber Company, C. D. Gibbs, and R. B. Stack, the sum of $5,000, as compensation for certain information furnished by him to them relating to the standing timber in the neighborhood of the north fork of the Coeur d'Alene river, in northern Idaho, with the view to the acquisition of such timber by them. A trial before the court and a jury resulted in a verdict and judgment in favor of the plaintiff and against all of the defendants for $5,000, from which they have appealed.

Respondent has been for some years engaged in the lumbering business in northern Idaho and thereby acquired knowledge of the timber resources of the country in the vicinity of the north fork of the Coeur d'Alene river and its tributaries. Appellant Stack-Gibbs Lumber Company is a corporation, organized under the laws of the state of Michigan. At the times here involved, its principal place of business was at Spokane, in this state, and it was engaged in the lumber and sawmill business and in acquiring timber lands. Appellants C. D. Gibbs and R. B. Stack were, at the times here involved, the vice president and assistant secretary, respectively, of the lumber company, with their residence at Spokane. They had the active management of the affairs of the company at its principal office and place of business at Spokane, and were the highest officers representing it residing in either Washington or Idaho. The nature of the contract

and the services upon which respondent rests his claim against appellants are alleged in his complaint as follows:

"That on or about the 1st day of February, 1906, the said defendant C. D. Gibbs, acting for himself and for R. B. Stack and for the Stack-Gibbs Lumber Company, a corporation, and as agent of the said corporation and of said Stack, procured this plaintiff to furnish the said defendants with such information as the plaintiff had concerning the timber resources of said region, and the value and the character of the land, and thereupon the said defendants agreed with the plaintiff that the plaintiff should procure a cruiser, one J. B. Graves, who, in the employ of the plaintiff and of the Cameron Lumber Company, has acquired knowledge of the said timber region, to go with the representative of the said defendants into the territory where the said timber then was, and did then and there agree with the plaintiff to pay plaintiff a reasonable compensation for the information so given, the plaintiff for such consideration agreeing with the said defendants, and each of them, to do such work in furnishing information, in assisting in employing cruisers, and in assisting in getting said timber in shape for location, and by aiding the defendants in so doing as the defendants might from time to time require, including the furnishing of such information as the plaintiff had in relation thereto; and thereupon this plaintiff performed all of the covenants and agreements on his part, and procured the said J. B. Graves and the son of this plaintiff to go with the agents and representatives of the said defendants into the vicinity where the said timber was, and did furnish all the information required by said defendants."

It is further alleged that thereafter they promised to pay him $5,000 for his services under this contract, and that he agreed to accept that sum in full payment thereof.

One of the contested questions upon the trial was whether or not the alleged contract was such a joint and several contract as would entitle respondent to recover from any or all of the appellants. While the jury rendered a general verdict in favor of respondent and against all of the appellants, the jury also made certain special findings in the form of an-

swers to certain special interrogatories, which it is contended by counsel for appellants are so inconsistent with the general verdict as to entitle them to a judgment notwithstanding the verdict, or in any event to a new trial. The general verdict and special findings are as follows:

"Verdict for Plaintiff

"We, the jury in the case of Donald R. Cameron, plaintiff vs. Stack-Gibbs Lumber Co. a corporation and C. D. Gibbs and R. B. Stack, defendants, find for the plaintiff and assess his damages at the sum of $5,000 Five thousand and no-100 Dollars, with interest at 6% from the date of demand by the plaintiff.

"Spokane, Washington, Oct. 14th, 1910.

"C. E. Smith, Foreman."

"Special Interrogatories.

"Interrogatory No. 1.   Did the plaintiff enter into a contract with the defendant, C. D. Gibbs, intending at the time to contract with him individually?  Answer: No.

"Interrogatory No. II.  Did the plaintiff enter into a contract with the defendant, R. B. Stack, intending at the time to contract with him individually?  Answer: No.

. . . .

"Date Oct. 14th, 1910.          C. E. Smith, Foreman."

At the time the jury returned the verdict and special findings into court, the following occurred, as shown by the statement of facts:

"By Mr. Robertson [counsel for respondent]:  Is there any question in the mind of the court that the special verdicts are inconsistent, and that the jury should be sent back to the jury room?

"By the court:  Gentlemen of the jury, did you intend that the general verdict was your verdict?

"To which the jury responded "It is."

"The foreman:  The jury understood in answering the special findings that they had complied with the instructions of the court; that it was the intention of the jury in so answering the said special interrogatories to hold the said Stack and Gibbs individually responsible with the said company

and that if they had answered them otherwise the jury believed that they would not so hold them.

"The court:    Gentlemen, is the general verdict your verdict?

"Ten of said jury answered that it was and thereupon counsel for the plaintiff requested that if the special verdicts were inconsistent that the jury be permitted to return to the jury room.

"Thereupon the court said that the questions submitted were special interrogatories, and not special verdicts, and thereupon, the jury was polled as to the special interrogatories, and ten of the said jury said that the answers to the said special interrogatories were their answers and two of said jury stated that not having voted in favor of the general verdict, that the said answers to the interrogatories were not agreed to by them, and thereupon the jury was discharged from further consideration of the case."

Our attention is called to § 365, Rem. & Bal. Code, providing that:

"When a special finding of facts shall be inconsistent with the general verdict, the former shall control the latter, and the court shall give judgment accordingly."

It is insisted that these special findings are, in effect, that Gibbs and Stack did not contract with respondent individually in their own behalf, in any sense.   Reading the special finding and answers thereto standing alone, and without reference to the explanation given by the foreman of the jury to the court in the presence of the jury, upon counsel for respondent calling attention to the possible inconsistency between the general verdict and special findings, the contention of counsel for appellants would seem to be well founded.   But in the light of the foreman's remarks to the court as to the intentions of the jury in rendering the general verdict and answering the special interrogatories, it seems that the jury intended to find that neither Gibbs nor Stack intended to contract solely with respondent, without also at the same time contracting for the company.   It is evident that the jury thought by answering these special interrogatories in

the affirmative such answers would have the effect of finding that no contract was made in behalf of the company, but that it was solely made with Stack or Gibbs or both accordingly as either or both of the interrogatories might be answered in the affirmative. The word "individually," as used in the interrogatories, evidently conveyed to the minds of the jurors the thought of such a contract made by them or either of them as individuals entirely apart from the company and without at the same time binding the company as a party thereto.

In ascertaining the meaning of a verdict or special findings of a jury, the language used is to be liberally construed. In the text of 22 Ency. Plead. & Prac., 955, which seems to be well supported by the decisions, it is said:

"In the construction of a verdict the first object is to learn the intent of the jury, and when this can be ascertained such effect should be allowed to the findings, if consistent with legal principles, as will most nearly conform to the intent. The jury's intent is to be arrived at by regarding the verdict liberally, with the sole view of ascertaining the meaning of the jury, and not under the technical rules of construction which are applicable to pleadings."

It has also been held that the trial judge may make such inquiry of the jury as to enable him to understand their will and intention, and their answers to such inquiry will be looked to as an aid to the rendering of the proper judgment. *Spurr v. Shelburne*, 131 Mass. 429; *Lovejoy v. Whitcomb*, 174 Mass. 586, 55 N. E. 322; *Walker v. Sawyer*, 13 N. H. 191; *South Hampton v. Fowler*, 54 N. H. 197; *Cross v. Grant*, 62 N. H. 675, 13 Am. Rep. 607. These cases are also authority upon the proposition that the answer of the foreman in the presence of the jury under such circumstances as are here shown, is considered as being assented to by the other jurors. It will be noticed that this explanation by the foreman was before the discharge of the jury from the consideration of the case, and being made of record by the

statement of facts, is now a part of the record in the case as much as the answers to the special interrogatories are. Indeed, the explanation became a part of those answers. Whilst the rule is that a special finding will control a general verdict inconsistent therewith, it was said by this court in *McCorkle v. Mallory*, 30 Wash. 632, 71 Pac. 186, that:

"Where a special verdict is susceptible of two constructions, one of which will support the general verdict and the other will not, that construction will be given the special verdict which will support the general verdict."

And in *Gaudie v. Northern Lumber Co.*, 34 Wash. 34, 74 Pac. 1009, it was said:

"A special finding must be irreconcilably inconsistent with the general verdict before the latter can be set aside and the former substituted in its place."

We are of the opinion, in view of the explanation made by the foreman of the jury in answer to the court's inquiry, that the answers to the special interrogatories are not necessarily so inconsistent with the general verdict as to warrant us in declining to give to the latter full force according to its terms.

It is contended that the trial court erred in giving instructions permitting the jury to find in favor of any one or all of the appellants. It is argued that, since the contract pleaded was joint and several, that therefore to allow a recovery against one or more of the appellants and not against all, as permitted by these instructions, the action having been prosecuted against all of them, would be to allow a recovery upon a several contract only, when no such contract was pleaded. In view of the general verdict against all of the appellants, the instructions complained of were rendered harmless, regardless of what might be said as to their technical correctness, since the verdict against all must have been rendered upon the theory that the contract was proven as pleaded. The jury had no occasion to consider

18—68 WASH.

under what circumstances one or more and not all of the appellants would be rendered liable to respondent.

It is contended that the trial court erred in giving to the jury the following instruction:

"If you believe that by the preponderance of the evidence that the defendants Gibbs and Stack were the vice president and secretary respectively of the defendant corporation and that they were in full charge of the office of the corporation in the West and that the corporation was in the business of buying timber and timber lands in connection with other business and that these officers, Gibbs and Stack, were apparently clothed with authority to transact the business of the corporation and among other things to make such bargains as that alleged by the plaintiff in his complaint, then such officers, Stack and Gibbs, would have implied authority to enter into contracts such as the one sued upon, in behalf of the corporation."

It is conceded that this instruction would have been free from error had the court, at the conclusion thereof, told the jury that the facts therein stated, if proven, would be *prima facie* evidence of authority from the company to Gibbs and Stack to make such a contract for it, instead of telling the jury that such facts would show implied authority therefor, without qualification. It is insisted that, by this instruction, the jury was prevented from considering statements made by Gibbs and Stack in their testimony to the effect that they did not have any such authority. The only evidence of such authority relied upon by respondent was that which tended to show facts of the nature stated in this instruction. He had no other knowledge touching the question of the authority of Gibbs and Stack to enter into such a contract for the company. The statement of Gibbs and Stack as to their want of authority can mean nothing more than that they did not have such authority conferred upon them by any formal act of the company, or else their statements amount only to their opinion as to the extent of their authority. Now, since the authority possessed by Gibbs and Stack here involved is

only such authority as respondent would be entitled to believe they possessed from the existence of facts such as are stated in this instruction, and that being the only evidence of authority upon which he was relying or could rely, not knowing what formal instructions or authority had been given them by the company, it would seem clear that the court was, by this instruction, fully advising the jury of the only test of the authority of Gibbs and Stack which could be used in determining the rights of respondent. In our present inquiry, it seems to be of no consequence as to whether or not the authority of Gibbs and Stack was sufficient for the making of this alleged contract, if we were considering the conflicting rights of them and the company as between themselves. We are of the opinion that this instruction was not prejudicially erroneous to the rights of appellants in view of the circumstances shown.

Some contention is made against the trial court's ruling in curtailing cross-examination of respondent by counsel for appellants. This contention involves only the trial court's discretion. It is clear from the record that the matter sought to be brought out by the question which was not allowed to be answered was amply covered by previous questions and answers made in the cross-examination of respondent. Clearly there was no abuse of discretion on the part of the trial court in this regard.

Contentions are made and argued at considerable length upon appellants' challenge to the sufficiency of the evidence to sustain the verdict and judgment. We deem it sufficient to say that a careful reading of all the evidence convinces us that we would not be warranted in disturbing the judgment upon this ground of contention.

Upon the whole record, we are constrained to affirm the judgment. It is so ordered.

DUNBAR, C. J., GOSE, and CROW, JJ., concur.