[No. 25655. Department One. August 7, 1935.]

YAKIMA FIRST NATIONAL BANK, *Respondent,* v. J. R. PETTIBONE *et al., Appellants.*[1]

[1]Reported in 47 P. (2d) 997.

664

*Snively & Bounds,* for appellants.

*Rigg, Brown & Halverson* and *Paul M. Goode,* for respondent.

BEALS, J.—Defendants J. R. and Emma Pettibone have been for many years husband and wife, the defendant LaVerne Pettibone being their daughter. January 13, 1934, the plaintiff herein, Yakima First National Bank, a corporation, recovered judgment against Mr. and Mrs. Pettibone in the superior court for Yakima county for the sum of $565.66, together with attorney's fees and costs, the judgment having been based upon a complaint alleging an indebtedness from the defendants to the plaintiff upon a promissory note for five hundred dollars, bearing date May 23, 1932. By warranty deed, dated June 21, 1932, Mr. and

Mrs. Pettibone, for "One Hundred Dollars and other valuable considerations," conveyed to their daughter, the defendant LaVerne Pettibone, lot 11, of block 153, of Natchez addition to the city of Yakima.

During the month of October, 1934, plaintiff instituted this action, alleging in its complaint that it had recovered judgment against Mr. and Mrs. Pettibone, as hereinabove set forth; that, after the debt upon which plaintiff had recovered judgment was incurred, Mr. and Mrs. Pettibone conveyed the property above described to LaVerne Pettibone; that the property was worth two thousand dollars; and that the conveyance thereof to Miss Pettibone was without consideration, and was made for the purpose of "hindering, delaying and defrauding this plaintiff." Plaintiff also alleged that Mr. and Mrs. Pettibone were possessed of no other property not exempt from execution, upon which plaintiff could levy in order to satisfy its judgment. Plaintiff prayed that the conveyance to Miss Pettibone be set aside, and that the property be adjudged to belong to Mr. and Mrs. Pettibone, subject to the lien of plaintiff's judgment. The defendants answered, denying all the allegations of plaintiff's complaint (including the allegations that they were husband and wife, and that LaVerne is their daughter); and the action proceeded regularly to trial, resulting in a judgment in plaintiff's favor, granting it the relief prayed for, from which judgment the defendants have appealed.

Appellants assign error upon the admission of certain testimony offered by respondent, upon the entry of judgment in respondent's favor, and upon the denial of their motion for judgment in their favor notwithstanding the decision of the court, or, in the alternative, for a new trial.

The record shows that the judgment which re-

spondent recovered against Mr. and Mrs. Pettibone in the prior action was based upon an indebtedness which accrued in this respondent's favor on or prior to May 23, 1932. Appellants objected to testimony given by an employee of respondent to the effect that the note upon which respondent recovered judgment against the Pettibones was a renewal note, their objection being based upon the ground that the original note was not produced or accounted for. This objection was technically well taken, and, upon the record as made, should have been sustained. Other evidence was, however, received without objection, from which it appears that the original loan was made during the month of May, 1931. In any event, it appears from the record that the note upon which respondent procured judgment against J. R. and Emma Pettibone was dated prior to the deed of the lot to LaVerne Pettibone.

Appellants offered no evidence, save the deed to Miss Pettibone, and now contend that the case made by respondent is not sufficient to support the judgment in its favor. The action being of equitable cognizance, no findings of fact were entered, although we have the benefit of a written memorandum opinion filed in the cause by the trial judge. Two written statements, signed by Mr. Pettibone, dated, respectively, May 11, 1931, and April 28, 1932, made for respondent, are in evidence. In these statements, Mr. Pettibone scheduled the property here in question as belonging to himself, it being the only unencumbered property of which he was then possessed.

Appellants contend that the respondent did not make out a *prima facie* case against them, and that the trial court erred in granting the relief for which it asked. While the evidence is rather meager, we are of the opinion that, it appearing *inter alia* that

Mr. and Mrs. Pettibone, after becoming indebted to respondent, conveyed to their daughter property which they valued at from $3,000 to $3,500, upon a consideration expressed as hereinabove set forth, the burden of proof shifted to appellants to establish the *bona fides* of the transaction as against respondent. In reaching this conclusion, we consider, of course, all the evidence and lack of evidence disclosed by the record.

Appellants argue that respondent unduly delayed in bringing this action, but in the absence of some affirmative showing on the part of appellants, it cannot be held that the period which elapsed since the rendition of the original judgment in respondent's favor and the commencement of this action was so great as to deprive respondent of its right to sue.

None of the appellants testified, and, as stated by this court in the case of *Bank of Chewelah v. Carter*, 165 Wash. 663, 5 P. (2d) 1029, this fact, without explanation, fairly gives rise to the inference that their testimony would neither have supported their pleaded denials of the allegations contained in the respondent's complaint nor tended to disprove the evidence offered by respondent.

Appellants contend that, because it does not appear that respondent caused execution to issue on its judgment prior to the institution of this action and either procure a levy of such an execution or a return thereof *nulla bona,* respondent cannot maintain this action. While there are authorities which support the rule contended for by appellants, we are satisfied, as stated by Judge Dunbar in the case of *Benham v. Ham,* 5 Wash. 128, 31 Pac. 459, 34 Am. St. Rep. 851, that the trend of modern decisions is away from the strict rule followed in former times. This is truer now than when this court, in the case cited and in the later case of

*Crandall v. Lee,* 89 Wash. 115, 154 Pac. 190, approved the modern and more liberal doctrine. In the latter case, it was held that a judgment creditor could attack a transfer of property by direct levy of execution without first having the execution returned *nulla bona.* The rule is laid down in 27 C. J., p. 740, § 603, as follows:

"Under the statutes of many jurisdictions the lien of a judgment attaches to the real estate of a debtor when the judgment or a transcript of it is recorded or filed in the proper office of the county where the land is situated. Where this is the case a creditor may file his bill to set aside a fraudulent conveyance as soon as he has obtained a judgment without issuing execution thereon, if the action is brought for the purpose of making his lien more available and efficient and in aid of an execution thereafter to be issued."

In this connection, appellants cite the case of *Allen v. Kane,* 79 Wash. 248, 140 Pac. 534. In that case, the plaintiff, having recovered judgment against the defendants, caused execution to issue on her judgment, which was levied upon property which the defendants had conveyed. The action which resulted in the decision above referred to was thereafter brought for the purpose of subjecting the property to the lien of the judgment. In the course of the opinion, the court, referring to the plaintiff in the action, whose position was similar to that occupied by respondent here, said:

"Such creditors must still proceed to reduce their claims to judgment and issue execution thereon before they can proceed in equity to subject the property conveyed in fraud of their rights to the payment of their claims. Bump, Fraudulent Conveyances (4th ed.), § 535. This, however, is a very different thing from assuming, as counsel assumes, that a creditor is not a creditor until his credit has been reduced to a judgment and a specific lien attached to specific property. The transfer is, of course, valid until it is attacked in a legal way, and it can only be attacked after the creditor's claim is reduced to judgment. The creditor,

though a creditor before such judgment, must proceed to appropriate the property which he seeks to subject, by a due course of law. After his claim has been reduced to judgment, he can subject to its payment property which has been conveyed in prejudice of his pre-existing right as a creditor on which the judgment is founded. *Lillard v. McGee*, 4 Bibb (Ky.) 165. This is not only the general rule, but it is the established law of this state, clearly recognized by our decisions."

In the case cited, execution had been issued and levied. The opinion clearly stated the rule that the creditor must reduce his claim to judgment, which respondent did in the case at bar. That is the important step to be taken and establishes the creditor's right against the debtor. We are not disposed to give to the words "and issue execution thereon," those words having been used in the case cited rather incidentally, as applying to the condition there present, a meaning which will make them of equal importance with the holding that the claim must first be reduced to judgment.

The institution of such an action as this is a direct attack upon the title of the transferee of the property, and, in so far as the questions presented in this action are concerned, we see no reason for reversing the judgment appealed from simply because the form of issuing an execution had not been complied with. We accordingly hold that the steps taken by respondent properly presented to the trial court the question to be determined, to-wit: Whether or not the property conveyed to LaVerne Pettibone should be held to be subject to the lien of respondent's judgment.

The function of an execution bearing a return showing no property found is to make a *prima facie* showing that the judgment debtor is insolvent. 27 C. J., p. 812, § 749-4. Generally speaking, a judgment creditor cannot attack the judgment debtor's transfer

of his property, unless it appears that the judgment cannot be satisfied out of other property still standing in the name of the debtor, or that the debtor is insolvent. Such a showing is part of a *prima facie* case, but the necessary factor may be supplied by any competent evidence sufficient to shift the burden of proof to the debtor. Appellants argue that no such *prima facie* showing was here made, but while, as above stated, the evidence is meager, we cannot hold that it is so completely wanting in necessary facts as to require reversal of the judgment rendered by the trial court.

In the case of *Lung v. Bank of California,* 127 Wash. 615, 221 Pac. 293, this court said:

"It is strong evidence of insolvency when a trader is unable to meet his obligations as they mature, and stronger evidence when he is given time and opportunity and fails to meet them."

In the case at bar, it appears from competent evidence that Mr. Pettibone's indebtedness to respondent was first incurred approximately a year prior to the date of the note sued upon. That the original indebtedness was not paid in due course is some, even though slight, evidence of financial inability on the part of the maker thereof. It also appears that an agent of respondent, shortly after the conveyance of the lot to LaVerne Pettibone, objected to the transfer, and requested that the property be retransferred to Mr. Pettibone, or that the daughter join in the execution of the note. The witness stated that Mr. Pettibone refused to agree to either alternative.

We are satisfied that, from the record in this case, it should be held that respondent made a *prima facie* showing as to the financial condition of appellants Mr. and Mrs. Pettibone to warrant the trial court in entering judgment against appellants, in the absence of any

evidence on behalf of appellants contradicting that offered by respondent.

Finally, appellants contend that the record contains no evidence as to the value of the property in question. The record does show that Mr. Pettibone valued the property once at $3,000, once at $3,500. This showing makes a *prima facie* case on the matter of value, and, in the absence of any explanation on the part of appellants as to the "other valuable considerations" referred to in the deed to appellant LaVerne Pettibone, supports the judgment.

Upon the record before us, we cannot hold that the trial court erred in holding that respondent made a *prima facie* case and in entering judgment in its favor.

The judgment appealed from is accordingly affirmed.

BLAKE, MAIN, TOLMAN, and GERAGHTY, JJ., concur.