[No. 27980. *En Banc.* January 31, 1941.]

NELLIE U. WRIGHT *et al., Appellants,* v. SAFEWAY STORES, INC., *et al., Respondents.*[1]

[1]Reported in 109 P. (2d) 542.

342

*Kennett & Benton,* for appellants.

*Skeel, McKelvy, Henke, Evenson & Uhlmann,* for respondents.

JEFFERS, J.—Nellie U. Wright and Charles M. Wright, her husband, instituted this action to recover damages for injuries claimed to have been sustained by Mrs. Wright as the result of a fall on the floor of a store operated by defendant Safeway Stores. Defendant William Weiuman was assistant manager of the store.

The case was tried to the court and jury, and a verdict was returned in favor of. plaintiffs and against Safeway Stores only. On December 23, 1939, the trial court granted the motion of Safeway Stores for a new

trial, on the ground and for the reason that instruction No. 11, given by the court, which reads as follows:

"If you find that either party of the action has failed to produce evidence under the control of such party, then the law presumes that such evidence, if introduced, would be against the contention of such party,"

is an erroneous statement of the law as applied to the case at bar; and for the further reason that the instruction is not justified or supported by the evidence in this case.

The court, construing the verdict of the jury as being favorable to defendant Weiuman, entered a judgment dismissing the action with prejudice, as to him. Plaintiffs have appealed from that part of the judgment dismissing defendant William Weiuman, and from the order granting a new trial to Safeway Stores.

We shall hereinafter refer to Mrs. Wright as though she were the only appellant.

Appellant, in accordance with subd. 2, Rule IX, Rules of the Supreme Court, 193 Wash. 10-a, filed a list of the points upon which she expected to rely on appeal, and the record certified here does not purport to cover the entire record, but only so much thereof as pertains to the points relied upon, the first one being:

"(1) That, under instruction No. 14 and verdict returned by the jury, it was error for the court to dismiss the action, with prejudice, as to the defendant Weiuman. That the verdict returned by the jury did not entitle said defendant to a dismissal with prejudice but, at the most, to a mistrial."

Instruction No. 14, in so far as material, provides:

"Upon retiring to the jury room you will select one of your number as foreman, whose duty it will be to sign whatever verdict you agree upon, or to communicate with the court if necessary. You will be furnished with all of the exhibits, these instructions, and the following forms of verdict: *One form you will use in*

*case you find for the plaintiffs, in which event you will fill in the amount you allow them and the name or names of the defendant or defendants against which you find the verdict;* the other form you will use in case you find for a defendant or both defendants, in which event you will fill in the name of the defendant or defendants for whom you find such verdict." (Italics ours.)

The verdict as returned by the jury was in the following form:

"We, the jury in the above entitled cause, do find for the plaintiffs and against the defendant Safeway Stores, Inc., a corp. In the sum of $3000.00."

Appellant contends that, under the instruction given by the court, it was necessary for the jury to make an affirmative finding of nonliability in favor of defendant Weiuman before he could be dismissed from the case, and that the trial court misconstrued the legal effect of the verdict as returned. No authority is cited by appellant to sustain such contention.

■■ In the construction of a verdict, the first object is to learn the intent of the jury, and when this can be ascertained, such effect should be given to the verdict, if consistent with legal principles, as will most nearly conform to the intent. The jury's intent is to be arrived at by regarding the verdict liberally, with the sole view of ascertaining the meaning of the jury, and not under the technical rules of construction which are applicable to pleadings. *Cameron v. Stack-Gibbs Lumber Co.*, 68 Wash. 539, 123 Pac. 1001.

When the first clause of instruction No. 14, relative to forms of verdict, is considered in connection with the form of the verdict returned, there is no doubt in our minds of what the intention of the jury was. We are of the opinion that, by returning a verdict against Safeway Stores only, the jury indicated that they did not find for the plaintiff and

against defendant Weiuman just as plainly as though they had made an affirmative finding to that effect. Appellant's first contention cannot be sustained.

The second point relied upon by appellant is that no error was committed by the court in giving instruction No. 11, hereinbefore set out. Appellant contends that the instruction contains a correct statement of the law, citing the following cases, in which it is contended the rule has been applied: *State v. Constantine,* 48 Wash. 218, 93 Pac. 317; *Glasgow v. Nicholls,* 124 Wash. 281, 214 Pac. 165, 35 A. L. R. 419; *Lenover v. Beckman,* 142 Wash. 98, 252 Pac. 533; *Wood v. Miller,* 147 Wash. 251, 265 Pac. 727; *Rosenstrom v. North Bend Stage Line,* 154 Wash. 57, 280 Pac. 932; *Bank of Chewelah v. Carter,* 165 Wash. 663, 5 P. (2d) 1029; *In re Simpson's Estate,* 169 Wash. 419, 14 P. (2d) 1; *Bond v. Werley,* 175 Wash. 659, 28 P. (2d) 318; *Gaskill v. Amadon,* 179 Wash. 375, 38 P. (2d) 229; *Yakima First Nat. Bank v. Pettibone,* 182 Wash. 663, 47 P. (2d) 997; *Burgin v. Universal Credit Co.,* 2 Wn. (2d) 364, 98 P. (2d) 291. Appellant further contends that it was clearly established by the evidence that respondent failed to call a number of witnesses who were presumptively under its control and who might have testified to material facts in the case, and that therefore the instruction was properly given.

Before discussing the evidence in this case, let us look at the cases above cited, and some general authority and authority from other jurisdictions, in an endeavor to determine the purpose of the rule here sought to be invoked, and the scope of the rule.

The *Glasgow, Lenover, Bank of Chewelah, Bond* and *Yakima First Nat. Bank* cases, *supra,* were tried to the court without a jury. In none of them, except the *Bond* case, is the word "presumption" used in connection with the failure of a witness to testify, but in each

case a statement is made similar to the following statement in *Glasgow v. Nicholls, supra:*

"Nicholls [a party to the action] was not offered as a witness, and this fact properly gives rise to an *inference* that if he had been called and had testified to the truth his contention would not have been aided thereby." (Italics ours.)

In all the cases cited by appellant, the rule was applied only where the one who failed to testify was a party to the action, or an almost indispensable witness to the transaction which gave rise to the controversy. In none of the cited cases was there a situation such as presented in the instant case, where the one against whom the rule is invoked had called witnesses to meet all the issues raised by appellant, but who, according to appellant, had failed to call other witnesses who might also have testified to the condition which gave rise to the controversy.

The reason for the rule is stated in 10 R. C. L. 884, § 32, as follows:

"The conduct of a party to a cause may be of the highest importance in determining whether the cause of action in which he is plaintiff, or the ground of defense if he is defendant, is honest and just; just as it is evidence against a prisoner that he has said one thing at one time and another at another, as showing that the recourse to falsehood leads fairly to an inference of guilt. Anything from which such an inference can be drawn is cogent and important evidence with a view to the issue. And so it has become a well established rule that where evidence which would properly be part of a case is within the control of the party whose interest it would naturally be to produce it, and, without satisfactory explanation, he fails to do so,—the jury may draw an inference that it would be unfavorable to him. . . . It has been said to be an inference of fact, not a presumption of law. However this may be, it is not substantive proof, and cannot supersede the necessity of other evidence on behalf

of the party for whose benefit the presumption is to be made."

In the same volume, at p. 886, § 33, we find this further statement:

"The presumption arising from a failure to call a witness applies only to witnesses who are 'in the power of the party,' as it is expressed, which means at hand and subject to a subpoena, and whose testimony would not be trivial, or to be classed as merely cumulative, but important and necessary."

And at p. 890, § 38, the volume states:

"Where the nonproduction of evidence in a jury case occurs under such circumstances that the judge, if trying the case without a jury, would deem himself justified in drawing an adverse inference from the failure to produce the evidence, the practice is not to charge the jury that there is a presumption against the party, but to instruct that the jury are at liberty to draw an unfavorable inference against the party if they think it warranted under all the circumstances. The use of the term 'presumption' will not, however, be fatal to the instruction if the context shows that it was used in the sense of an inference which the jury were at liberty to draw."

In *Rosenstrom v. North Bend Stage Line,* 154 Wash. 57, 280 Pac. 932, cited by appellant, the court gave the following instruction:

" 'Whenever it develops in the course of a trial that there are witnesses available to one party or the other who, if called, could testify to material facts favorable to such party, then if such party fails to call such witnesses, or to explain his failure so to do, you are justified in assuming that, if called, said witnesses would have testified adversely to the interest of such party.' "

The opinion in the cited case states:

"The general rule thus announced by the court has the sanction of the authorities, but it is of but limited application. In instances where the witness is an actor in the transaction which gives rise to the contro-

versy, and is presumably favorably disposed towards one of the parties and that party does not produce him as a witness, it is presumed that his testimony, if produced, would be unfavorable to him. But the rule is not applicable to strangers who are mere witnesses to the transaction and equally within the call of the one party as the other."

In the cited case, the judgment was reversed, for the reason that the witnesses who it was claimed were not called were passengers on the stage, and as to them the rule was not applicable.

There are further limitations upon the general rule than those referred to, or to which it was necessary to refer, in the *Rosenstrom* case, *supra*. Another limitation or exception may be stated as follows:

"But these rules do not require the production of the greatest amount of evidence, which it is in the power of the party to produce, as to any given fact. All the law requires is sufficient proof, and a litigant is not bound to produce and examine all the witnesses who know anything of the transaction, or, failing to do so, to have the presumption indulged against him that such witness, if produced, would not support his right." *Fulsom-Morris Coal etc. Co. v. Mitchell*, 37 Okla. 575, 132 Pac. 1103.

To the same effect is *Baldwin v. Brooklyn Heights R. Co.*, 99 App. Div. 496, 91 N. Y. Supp. 59.

While certain statements to be found in the case of *Mitchell v. Tacoma R. & Motor Co.*, 9 Wash. 120, 37 Pac. 341, seem to be somewhat inconsistent, we find therein the following statement:

"The only available witness, the conductor, was called and testified for the defendant, *and even if the defendant had made no effort to secure the testimony of the gripman, it would not have authorized the jury to infer that his testimony would be prejudicial.*" (Italics ours.)

The opinion cites the case of *Bleecker v. Johnston*, 69 N. Y. 309, which recognizes the limitation hereinbefore referred to, that the mere omission of a party to a civil action to call a witness, who, at the most, has no other or better knowledge of the matter in dispute than those who are produced and give evidence, is not necessarily suspicious, entitling the adverse party to every presumption to his prejudice. An instruction was given in the *Bleecker* case which, while worded differently than the instruction in the instant case, was to practically the same effect. The court, in the *Bleecker* case, commenting on the instruction, stated:

"It was not left to the jury to say whether, under the circumstances, the absence of the defendant was suspicious, so as to authorize an unfavorable inference, but they were told that it was the duty of the defendants to call him, and that the defendants being bound to produce him, his non-production not merely justified a favorable consideration of the evidence for the plaintiff, but that they might infer that his testimony would be adverse to the defendants, thus permitting the jury to give the plaintiff the benefit of the evidence of the unsworn witness, as if he had given evidence in his favor."

Having in mind the purpose of the rule and the limitations placed upon it, let us now look to the testimony in this case, to determine whether or not the facts presented a proper case for the submission to the jury of an instruction on the inference or presumption.

Appellant was the only witness called on her behalf who testified as to the condition of the floor, and the time and place where the accident happened. She testified that there were three little pools of oil which had collected in grooves in the floor in the passageway through which she had to pass, and that her injuries were caused by slipping on this oil and falling.

While it seems to be conceded that respondent called three witnesses to rebut the testimony of appellant as to the condition of the floor and as to the time when the floor was last oiled, the testimony of one of these witnesses, Mr. Adams, manager of the meat department of respondent's store, does not appear in the statement of facts, other than as set out in the affidavit of Mr. Kennett, to which reference will hereinafter be made. Mr. Brandes, manager of respondent's store, who was called and talked with appellant immediately after her fall, and Mr. Weiuman, assistant manager of the store, both testified that the floor was never oiled except on a Saturday night before a double holiday, and that the last time the floor was oiled prior to the afternoon of September 3rd, the day appellant fell, was the night of July 3rd; that the floor was not again oiled until the night of September 3rd, the following Monday being Labor Day.

Mr. Weiuman, who had actual charge of the oiling operation, and who assisted personally in such operation, testified as to how the oil was put on, and he stated that there were five persons working there on Saturdays and days before a holiday. The witness was then asked:

"Q. And all five of you would take turns oiling? A. No, sir. Q. Well, who would, then? A. It was customary for the manager to check up the day's receipts, and at least two men in the produce department arranged the produce in the produce department for the night, and the remainder of the crew would work on the oiling operation. Q. Then we finally get down to how many oiling? A. Two, and they took turns. Q. What? A. Either two oiling at all times or else they would take turns. Q. That is what I am trying to find out. They were either working in the produce and not oiling or oiling. Now, which were they doing? A. They were working with the produce. Q. And you, as assistant manager, were in

charge of the oiling department, is that it? A. Yes. Q. And pushed the oiler? A. Yes. . . . Q. During that entire two and a half years you were there was the floor of this store only oiled on days preceding double holidays? A. That is correct."

Mr. Brandes also testified the oil was applied by store employees; that very seldom was there any excess oil on the floor after the oiling operation, but that if there was a little excess, the spots were dried out with burlap bags tied over a broom; that any such spots were dried out thoroughly before the trade was allowed to pass through; and that after such drying out there was never any need to repeat the operation. This witness also testified there was not a drop of excess oil on the floor the afternoon of the accident.

In addition to the testimony above referred to, appellant asks us to consider what purports to be certain testimony of Mr. Brandes, Mr. Weiuman, and Mr. Adams, given in depositions on November 21, 1939. The reference to this testimony is found in an affidavit of Mr. Kennett filed in support of a motion for a reconsideration of the oral ruling made by the court on respondent's motion for new trial. While the affidavit was made a part of the statement of facts, the depositions referred to in the affidavit were not. We are satisfied we cannot, on this appeal, consider the testimony as set out in the affidavit. However, if considered, it would add nothing to the testimony hereinbefore referred to, except as to Mr. Adams, whose testimony does not appear in the statement of facts other than as set out in the affidavit of Mr. Kennett.

Appellant contends that from this evidence the jury was entitled to find that respondent failed to produce at least three, and possibly five, witnesses who could have testified concerning the condition of the floor at the time Mrs. Wright fell, and as to the date upon

which the floor had been last oiled. Appellant's contention is objectionable for the same reason that instruction No. 11 is objectionable.

In not every case where a party to an action has failed to produce a witness or witnesses under his control, who could have testified to material facts favorable to such party, and has failed to explain his failure so to do, can it be inferred that the testimony of such witness or witnesses, if produced, would have been unfavorable to such party, but a court or jury may draw such inference only when under all the circumstances of the case the failure to produce such witness or witnesses, unexplained, creates a suspicion that the failure to produce was a willful attempt to withhold competent testimony.

It is evident that instruction No. 11 is too broad in its scope to meet the legal requirements, in any case, and we think it just as evident, from the authorities cited, that, under the facts in this case, no instruction should have been given on the inference or presumption.

It is admitted that respondent called two witnesses who could and did testify in regard to how and when the oiling was done, and as to the condition of the floor at the time appellant claimed to have sustained her injuries. The witnesses called by respondent were in at least as good a position to testify to these facts as any witness who could have been called, if not better, admitting that there may have been other witnesses who could have testified relative to such circumstances.

We are satisfied that it does not appear from this record but that respondent produced the best testimony available to it, in regard to the material issues; and this being so, we are further satisfied that it cannot be inferred in this case that the failure of respondent

to produce other witnesses was sufficient to create a suspicion that the testimony of such other witnesses was being willfully withheld.

We are clearly of the opinion a new trial was properly granted in this case.

For the reasons herein assigned, the judgment is affirmed.

ROBINSON, C. J., BEALS, SIMPSON, and STEINERT, JJ., concur.

BLAKE, J. (dissenting)—The order granting a new a new trial to Safeway Stores, Inc., presents simply the question as to whether the rule stated in instruction No. 11 is applicable to the situation developed at the trial. The rule stated is well recognized and often invoked in this jurisdiction. *Harold v. Toomey,* 92 Wash. 297, 158 Pac. 986; *Glasgow v. Nicholls,* 124 Wash. 281, 214 Pac. 165, 35 A. L. R. 419; *Lenover v. Beckman,* 142 Wash. 98, 252 Pac. 533; *Bank of Chewelah v. Carter,* 165 Wash. 663, 5 P. (2d) 1029; *Warren v. Bowdish,* 166 Wash. 217, 6 P. (2d) 593; *Bond v. Werley,* 175 Wash. 659, 28 P. (2d) 318; *Gaskill v. Amadon,* 179 Wash. 375, 38 P. (2d) 229; *Yakima First Nat. Bank v. Pettibone,* 182 Wash. 663, 47 P. (2d) 997.

In *Rosenstrom v. North Bend Stage Line,* 154 Wash. 57, 280 Pac. 932, the rule is stated:

"In instances where the witness is an actor in the transaction which gives rise to the controversy, *and is presumably favorably disposed towards one of the parties and that party does not produce him as a witness, it is presumed that his testimony, if produced, would be unfavorable to him.* (Italics mine.)

Now, in the light of the rule as thus stated, let us examine the facts to see whether the rule was properly invoked by the instruction given by the court

which, upon motion for new trial, it conceived to be erroneous.

Plaintiff testified that her fall was caused by the accumulation of oil in depressions in the floor in or near a passage-way through which she had to pass. To rebut this testimony, defendants called only two witnesses—Brandes, the store manager, and Weiuman, the assistant manager. From their testimony, it appears that the floor is never oiled except on a double holiday; that there was no fresh oil on the floor on Saturday, September 3rd, the day the plaintiff fell; that the last time the floor was oiled prior to that was the double holiday that came with the Fourth of July; that the floor was again oiled on the evening of September 3rd, the following Monday being Labor Day; that five persons worked in the grocery department on Saturdays; that, on evenings when the floor was oiled, it was customary for the manager to. check up the day's receipts, and at least two men arranged the produce in the produce department, "and the remainder of the crew would work on the oiling operation."

Now, from this testimony, it appears that there were three persons besides Brandes and Weiuman in the employ of the defendant corporation at the time plaintiff fell, who, of necessity, knew whether or not there was fresh oil on the floor—whether or not the floor had been oiled since July Fourth. It seems to me they were essentially "actors in the transaction" in the oiling of the floor. The oily condition of the floor was the issue upon which liability turned; and the time it had been last oiled prior to September 3rd was of the essence of the issue. Yet, defendants did not see fit to call them as witnesses or explain their absence.

Upon these facts, I think, under the rule as stated

in the *Rosenstrom* case, it was incumbent on the defendant corporation to take one course or the other if it wished to escape the inference that, if called, their testimony would be unfavorable to it. The situation developed here is essentially no different from a situation where the motorman or conductor of a street car, or the owner or driver of an automobile, involved in a collision, is not called nor his absence explained. See *Mitchell v. Tacoma R. & Motor Co.*, 9 Wash. 120, 37 Pac. 341; *Lenover v. Beckman*, 142 Wash. 98, 252 Pac. 533, *supra*.

I dissent.

MAIN, MILLARD, and DRIVER, JJ., concur with BLAKE, J.

