[No. 5760-3-II.   Division Two.   April 4, 1983.]

THE STATE OF WASHINGTON, *Respondent,* v. ROBERT DOUGLAS MARK, JR., *Appellant.*

*Irving Dane,* for appellant.

*Arthur D. Curtis, Prosecuting Attorney,* and *Curtis A. Shelton, Deputy,* for respondent.

WORSWICK, A.C.J.—Robert Douglas Mark, Jr., appeals convictions of second degree burglary (one count) and first degree theft (one count). He contends the trial court erred in holding, following a CrR 3.5 hearing, that his statement to a police officer was admissible at trial. He also contends the court erred in refusing to give a missing witness instruction. We affirm.

In a statement to Clark County Deputy Sheriff Steve Nelson, one Robert Turner implicated himself and Mark in the offenses which ultimately resulted in Mark's conviction. Nelson testified at a CrR 3.5 hearing that he then inter-

viewed Mark in the Vancouver city jail where Mark was held for other reasons. He testified essentially that he advised Mark of his *Miranda* rights, determined they were understood, ascertained they were waived and took an oral, inculpatory statement. He admitted that he did not offer a "standard rights form" to Mark during the interview. He also admitted that Reserve Deputy Delbert Riehl was present at the interview. Riehl was not called as a witness, either at this hearing or at trial.

Defense counsel attempted to contradict Nelson's testimony by offering evidence that "rights forms" were available at the jail (Nelson said he was unaware of this at the time), and that neither Nelson nor Riehl had been logged into the jail on the afternoon in question. The corrections officer who so testified at the CrR 3.5 hearing admitted that he was not on duty at the time of the alleged visit by Nelson. When he testified again at trial, he also admitted that the visits of police officers who came to the jail to interview prisoners were frequently not logged. Mark did not testify at either the CrR 3.5 hearing or at trial.

Mark argues that the State failed to meet its "heavy *Miranda* burden" of showing a voluntary waiver of rights because there was circumstantial evidence that no interview took place and the State failed to call a corroborating witness (Riehl). He relies on *State v. Davis,* 73 Wn.2d 271, 438 P.2d 185 (1968). We disagree.

■ Mark confuses the issue. Whether an admission was made at all involves a simple question of fact "to which the *Miranda* holding with respect to the state's burden of proof is not applicable." *State v. Davis,* 73 Wn.2d at 281. The trial court, upon sufficient evidence, resolved that issue and we will not disturb its ruling.

■■ Mark can find no refuge in *Davis.* The State's evidentiary burden is to establish a voluntary waiver of rights by a preponderance of evidence. *State v. Braun,* 82 Wn.2d 157, 509 P.2d 742 (1973). It is apparent that the *Davis* holding—requiring corroboration where the defendant's testimony contradicts that of the State's single wit-

ness—is based on the rationale that the "heavy burden" has not been met if the court is confronted with a "swearing contest," and where corroborating testimony is available but not presented. *See also State v. Erho,* 77 Wn.2d 553, 559, 463 P.2d 779 (1970). There was no such contest in this case; defendant chose not to testify. The trial court, left with the uncontradicted testimony of Nelson, was satisfied that it was sufficient to sustain the State's burden. So are we. *State v. Dodd,* 8 Wn. App. 269, 505 P.2d 830 (1973).

Mark also relies on *Davis* to support his contention that the trial court erred in refusing a missing witness instruction. Again, we disagree.

■ The missing witness rule was defined in *Wright v. Safeway Stores, Inc.,* 7 Wn.2d 341, 109 P.2d 542 (1941), cited with approval in *Davis,* 73 Wn.2d at 276. The *Wright* court highlighted the essentials of the rule by observing:

> In not every case where a party to an action has failed to produce a witness or witnesses under his control, who could have testified to material facts favorable to such party, and has failed to explain his failure so to do, can it be inferred that the testimony of such witness or witnesses, if produced, would have been unfavorable to such party, but a court or jury may draw such inference only when under all the circumstances of the case *the failure to produce such witness or witnesses, unexplained, creates a suspicion that the failure to produce was a willful attempt to withhold competent testimony.*

(Italics ours.) *Wright,* 7 Wn.2d at 352. *Davis,* in applying the rule to post–*Miranda* criminal cases, attenuates this apparent stringency of *Wright* by stating the requirement that "one must establish such circumstances which would indicate, as a matter of reasonable probability, that the prosecution would not knowingly fail to call the witness in question unless the witness's testimony would be damaging." *Davis,* 73 Wn.2d at 280. Did Mark establish such circumstances? We hold he did not.

Mark attempted to raise again before the jury the factual issue of whether an interview took place. The evidence was in the same posture as at the CrR 3.5 hearing; again, Mark

did not testify. As a result, the jury had only Nelson's uncontradicted testimony. Did the minimal circumstantial evidence produced by Mark's counsel create a reasonable probability that Riehl was not called because his testimony would have damaged the State? We conclude it did not.

The testimony concerning "rights forms" proved nothing and was, therefore, irrelevant. Such forms are not required and no evidence was introduced to show that, in fact, they were commonly used.

The testimony concerning the jail log is technically relevant (ER 401), but considering that the very witness who testified on this subject also testified that he was not on duty at the time of the alleged interview and that interviewing officers frequently were not logged, we cannot conclude that the reasonable probability required by *Davis* was established by his testimony.

Affirmed.

PETRIE and REED, JJ., concur.

Reconsideration denied May 10, 1983.

Review denied by Supreme Court August 12, 1983.