# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 74965-0-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PAWEL ALBIN ORLINSKI, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: July 31, 2017 |
| | ) | |

VERELLEN, C.J. — Pawel Orlinski was arrested and charged with possession of methamphetamine. At trial, one of the arresting officers revealed on cross-examination that he took a photograph of the seized drugs and paraphernalia. The State did not offer any photographs into evidence. The trial court refused Orlinski's proposed adverse inference missing evidence instruction. Because the State offered the methamphetamine, drug paraphernalia, and expert testimony into evidence supported by a clear chain of custody, it was not naturally in the interest of the State to introduce a photograph of the seized drugs. The trial court did not abuse its discretion in refusing the proposed instruction.

We affirm.

## FACTS

An employee of an apartment building reported that a man was yelling and crying in the tenant parking lot and that the man refused to leave when asked. Officers Merritt, Abst-Olsen, and Williams observed Orlinski walking in circles, yelling and crying. His mouth was very dry and powdery. He said he was depressed, and appeared to be responding to imaginary stimuli. When the officers asked Orlinski if he was thinking about hurting himself, he said "yes" and then "no" and then repeatedly said, "I'm gonna destroy everybody."[1] The officers believed Orlinski was a danger to himself and possibly others and decided to send him for a mental health evaluation.

Officer Abts-Olsen asked Orlinski if he had been using methamphetamine, and Orlinski admitted that he had. The officers asked him if he had any needles on him, and he said that he did. The officers considered the needles to be potential weapons. Officer Merritt frisked Orlinski for weapons and found two needles, a glass pipe with black residue, and a two-inch glass container with a white crystal substance that appeared to be methamphetamine in his pockets. The suspected methamphetamine weighed 0.7 grams and had an approximate street value of $70. Officer Merritt packaged these items and performed a positive field test on the suspected methamphetamine.

The State charged Orlinski with possession of approximately 0.7 grams of methamphetamine. The items recovered from Orlinski's pockets were admitted into

---

[1] Report of Proceedings (RP) (Mar. 7, 2016) at 167.

evidence over defense objection as exhibits 1 (glass pipe), 2 (two-inch glass container), and 3 (methamphetamine contained in a plastic bag).

On cross-examination, Officer Merritt testified that he had taken photographs of the items taken from Orlinski's pocket before placing the items into evidence at the police station.

Officers Abts-Olsen and Williams both saw the items recovered from Orlinski's pockets, which included a glass pipe for smoking methamphetamine and a "glass vial" containing suspected methamphetamine.

Officer Merritt testified that he put the suspected methamphetamine in a plastic bag, put the bag into an evidence envelope, and sealed it with red property tape with his initials. Forensic scientist Mark Strongman tested the suspected methamphetamine in exhibit 3. Strongman testified that the envelope did not appear to have been tampered with when he received it for testing. The envelope had the original red evidence tape still intact. After Strongman tested the substance, he resealed the envelope with blue evidence tape. The substance tested positive for methamphetamine. Consistent with Officer Merritt's testimony, Strongman testified that the material that he tested was not contained in a glass vial, but it was packaged in a plastic bag.

Orlinski argued that there had been insufficient evidence about how the evidence was stored and transported during the year that intervened between when the material was recovered from Orlinski and when it was tested at the crime lab. The trial court concluded the objection went to the weight of the evidence, not its admissibility.

Orlinski asked for "the equivalent of a missing witness instruction regarding the evidence so that the jury can infer that that evidence was not helpful to the State."[2] The proposed instruction provided:

> If a party has failed to produce evidence that could have been presented, you may be able to infer that the evidence would have been unfavorable to a party in the case. You may draw this inference only if you find that:
>
> (1) The evidence is within the control of, or peculiarly available to, that party;
>
> (2) The issue to which that evidence is relevant is an issue of fundamental importance, rather than one that is trivial or insignificant;
>
> (3) As a matter of reasonable probability, it appears naturally in the interest of that party to introduce that evidence;
>
> (4) There is no satisfactory explanation of why the party did not produce the evidence; and
>
> (5) The inference is reasonable in light of all the circumstances.[3]

The trial court concluded the defense had not met its burden for an adverse inference instruction.[4]

The jury found Orlinski guilty as charged.

Orlinski appeals.

---

[2] RP (Mar. 8, 2016) at 242-43.

[3] CP at 87; see 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 5.20, at 188 (4th ed. 2016).

[4] RP (Mar. 8, 2016) at 248 ("I will certainly allow the defense to raise the photo issue to the jury in closing, but I'm not gonna give this particular instruction because I don't think the basic threshold has been met by the defense. Again, it's a good argument, but to a certain extent, I think it's cumulative.").

## ANALYSIS

Orlinski contends he was entitled to his proposed jury instruction allowing the jury to infer the missing photographs would have been favorable to him.

If based on a factual dispute, we review a trial court's refusal to issue a requested instruction for abuse of discretion.[5] A court abuses its discretion when its decision is manifestly unreasonable or based upon untenable grounds or reasons.[6]

If a party fails to call a particular witness or present certain evidence when it would seem logical to do so, an inference may arise that the evidence or testimony would have been unfavorable to the party.[7] To justify a missing witness instruction, the party proposing it must show the witness is peculiarly available to the other party and the circumstances at trial establish as a matter of reasonable probability that other party would not have knowingly failed to call the witness unless the witness's testimony would be damaging.[8] But the instruction is not "permitted where the witness is unimportant or the testimony would be cumulative."[9]

On these facts, the trial court properly determined that an adverse inference instruction would not be appropriate because it was not natural or logical for the State to present that cumulative evidence.

---

[5] State v. Walker, 136 Wn.2d 767, 771-72, 966 P.2d 883 (1998).

[6] State v. Powell, 126 Wn.2d 244, 258, 893 P.2d 615 (1995).

[7] Wright v. Safeway Stores, Inc., 7 Wn.2d 341, 352, 109 P.2d 542 (1941).

[8] State v. Reed, 168 Wn. App. 553, 571, 278 P.3d 203 (2012) (quoting State v. Davis, 73 Wn.2d 271, 280, 438 P.2d 185 (1968)).

[9] Id.

Orlinski argues the photographs were material and not cumulative because "they were the only objective evidence showing the condition" of the methamphetamine.[10] It is not clear whether photographs would have shown the condition of the drugs and paraphernalia after they were recovered from Orlinski's pockets. But the testimony of the officers and forensic scientists clearly established the chain of custody. As discussed, Officers Merritt, Abts-Olsen, and Williams all testified about the appearance of the seized items. Officer Merritt, who has advanced training on handling evidence, testified that he packaged the items according to the proper protocol. Specifically, Merritt testified that he put the drugs in a plastic bag, put the bag into an evidence envelope, and sealed it with property tape, which he initialed. When Strongman received exhibit 3 for testing, the original evidence tape was intact and the envelope did not look like it had been tampered with in any way. He opened the opposite end for testing and when finished, resealed the envelope. Both Merritt and Strongman testified that the envelope did not appear to have been tampered with, and its contents were admitted as exhibit 3.

Given this testimony, along with the actual items taken from Orlinski's pocket, there was no reason for the State to also present photographs of the same objects. Such evidence was less probative than the actual drugs and, as the trial court concluded, would have been cumulative.

---

[10] Appellant's Br. at 10.

Orlinski also suggests the drugs "are not unique or easily identifiable,"[11] but the evidence tape that Officer Merritt initialed and used to seal the containers made them easily identifiable and unique. Although there was conflicting testimony about whether the drugs were initially in a glass vial or a plastic bag, Officer Merritt explained he put the contents of the glass container (exhibit 2) into a plastic bag, then sealed the bag in an envelope (exhibit 3).[12]

Alternatively, Orlinski argues he was entitled to an adverse inference instruction as a sanction for the State's discovery violation. We review CrR 4.7 discovery decisions for abuse of discretion.[13] "Absent some showing of actual prejudice, we will not interfere with the trial court's exercise of discretion in denying sanctions pursuant to CrR 4.7(h)(7)(i)."[14]

CrR 4.7(a)(1)(v) requires the State to disclose "any books, papers, documents, photographs, or tangible objects, *which the prosecuting attorney intends to use* in the hearing or trial or which were obtained from or belonged to the defendant."[15] The State must also disclose "any material or information within the prosecuting attorney's knowledge which tends to negate defendant's guilt as to the offense charged."[16]

---

[11] Id. at 8.

[12] RP (Mar. 7, 2016) at 171 (Officer Merritt testifying that he put the drugs into another bag, sealed it with property tape, and initialed the tape).

[13] State v. Hutchison, 135 Wn.2d 863, 882, 959 P.2d 1061 (1998).

[14] State v. Bradfield, 29 Wn. App. 679, 682, 630 P.2d 494 (1981).

[15] (Emphasis added.)

[16] CrR 4.7(3).

Here, there is no showing that the prosecutor intended to use the photographs of the drugs and paraphernalia. Orlinski speculates the photograph might have shown that the substance recovered from his pocket was not methamphetamine or that a different substance was tested. Speculation neither negates his guilt nor establishes actual prejudice warranting any relief on appeal.[17]

We conclude the trial court properly exercised its discretion when it refused to give a missing witness instruction. Orlinski has not provided compelling authority that he was entitled to an adverse inference instruction as a discovery sanction.

Affirmed.[18]

WE CONCUR:

_____

_____

_____

---

[17] See Bradfield, 29 Wn. App. at 682.

[18] The State has indicated that it does not intend to seek appellate costs should it prevail.