[No. 25882.   Department One.   January 23, 1936.]

GOULD & COMPANY, *Respondent,* v. MOUNT BAKER SAV-
INGS & LOAN ASSOCIATION *et al., Appellants,*
SAMUEL H. FULFORD *et al., Defendants.*[1]

[1]Reported in 53 P. (2d) 841.

*R. W. Greene* and *C. A. Lee,* for appellants.

*A. H. Ward,* for respondent.

GERAGHTY, J.—The plaintiff, Gould & Company, brought this action to quiet its title to a herd of dairy cattle as against claims asserted by the defendants, based upon chattel mortgages. The plaintiff itself asserted title through foreclosure, by notice and sale, of a chattel mortgage on the herd, prior in time to the mortgages under which the defendants claimed.

The transactions giving rise to the litigation are numerous and considerably involved. The material findings made by the court follow:

"(5) That on or about July 24, 1929, the said Samuel H. Fulford gave a chattel mortgage to the Citizens State Bank of Ferndale in the sum of $1,831.36, covering a herd of registered Guernsey cattle then owned by him in Whatcom county, Washington.

"(6) That on December 17, 1931, said Fulford was indebted on said chattel mortgage in the sum of $1,347.67 and the plaintiff, Gould & Co., on said date purchased the said chattel mortgage from the said Citizens State Bank of Ferndale, paying to the Citizens State Bank the sum of $1,347.67 in cash for the mortgages. A written assignment of the chattel mortgage in due and legal form was filed for record in the office of the Auditor of Whatcom county on December 18, 1931.

"(7) The chattel mortgage was due January 24, 1930. An affidavit of revalidation and renewal, pursuant to the provisions of Section 3782 of Remington's Revised Statutes was filed in the office of the said County Auditor of Whatcom county on December 1, 1931. Thereafter a further affidavit of renewal and revalidation pursuant to provisions of Section 3783,

Remington's Revised Statutes, was filed in said office on November 15, 1932.

"(8) That on November 14, 1933, the said Gould & Co. placed in the hands of the Sheriff of Whatcom county, Washington, a notice of foreclosure sale and certified copy of the chattel mortgage, who foreclosed the said mortgage under the provisions of the laws of the state of Washington for foreclosure by notice and sale.

"(9) Said Gould & Co. at the time of foreclosure claimed that there was then due on the mortgage the sum of $1,476.20, principal and interest, and advances for feed sold and delivered to said Fulfords by Gould & Co. for the feed of the dairy herd, amounting to $1,375.05, making a total claim of Gould & Co. under the mortgage of $2,851.25.

"(10) In the mortgage foreclosure proceedings, the Sheriff of Whatcom county, Washington, levied upon the herd of cattle and the increase on November 15, 1933. Notices of foreclosure sale were posted in three public places in Whatcom county as required by law, one being posted at the place where the cattle were kept on the farm of the said Fulfords near Van Zandt in Whatcom county, Washington. The herd of cattle was not removed from the farm by the sheriff but the said Samuel H. Fulford, with the consent of Gould & Co., was appointed Sheriff's keeper to care for the herd between the date of levy and the date of sale; said Fulford signing a written agreement to act as Sheriff's keeper for the Sheriff as follows:

"CUSTODIAN AGREEMENT

"Bellingham, Wash., Nov. 15, 1933

"T. C. Fraser, Sheriff
"Whatcom County
"Bellingham, Wash.

"DEAR SIR:

"Regarding the personal property levied on November 15, 1933 situate at Farm premises of S. H. Fulford ¾ mile West of Van Zandt Sta. in Whatcom Co., Wash. Whatcom county, Washington, under and by virtue of that certain Notice of Foreclosure Sale wherein Gould & Co., a corporation is Mortgagor, and

S. H. Fulford is Mortgagor said levy being made on goods and chattels described as follows, to-wit:

17 Pure Bred Guernsey cows
5 Grade Guernsey cows
1 Guernsey Bull—registered
1 " " " calf (now mature)
4 Grade cows (Jersey)
1 Brindle cow
3 Pure Bred Guernsey heifers 5o to 9 months old-
1929)
1 Grade Guernsey heifer 7 months. (1929)
––
33 Some calves.

"This is to advise you that we are willing to have and hereby appoint S. H. Fulford as our Agent to act as Custodian of the said goods and chattels seized and advertised for sale on Nov. 28th, 1933, at 2:00 P. M. and continue to hold and/or operate said goods and chattels, and in consideration of your making said appointment we hereby agree to save you harmless for any acts or omissions of our said Agent and Custodian. Animals to be left at farm premises of S. H. Fulford ¾s of a mile West of Van Zandt Sta. in Whatcom Co., Wash.

"A. H. Ward
"Attorney for Plaintiff.

"Approved:
"T. C. Fraser, Sheriff
"By J. H. Dunn, Deputy.

"I hereby agree to act as Custodian of the goods and chattels levied on as hereinbefore described, under said writ and to deliver the same to the Sheriff of Whatcom County, Washington, or to his order, at any time the said Sheriff calls for the surrender of said goods and chattels.

"40 : 2 Rd.                 S. H. Fulford
" 40 : trips                Custodian

"(11) On November 28, 1933, the sheriff in the foreclosure proceedings sold the dairy herd and all increases to the plaintiff, Gould & Co., and executed and delivered to Gould & Co. a Sheriff's Bill of Sale which has been introduced in evidence and is by reference made a part of these findings.

"(12) The court finds that the levy and seizure made by the sheriff in the foreclosure proceedings were sufficient under the laws of this state and finds that all of the proceedings connected with the foreclosure of the said chattel mortgage were in compliance with the provisions of the statute so as to make the same a valid and legal foreclosure and sale and by virtue of this sale, the plaintiff Gould & Co. became vested with title to the said dairy herd.

"(13) That between the date of the sale and December 7, 1933, the plaintiff left the dairy herd with the said Fulfords under an oral agreement by which the Fulfords agreed to care for, feed, and milk the cattle and receive certain compensation therefor. That on December 7, 1933, Gould & Co. entered into a conditional sales contract to sell the dairy herd back to Iva Pearl Fulford for $3,000. The conditional sales contract was not filed for record in the office of the Auditor of Whatcom county until December 23, 1933. On December 26, 1933, Gould & Co. was advised that their contract had not been filed within ten days and on that day, Mr. J. H. Howell, Vice-President and manager of the Sedro Woolley Store of Gould & Co., and L. P. Nelson, the credit representative of the plaintiff drove to the Fulford farm and arranged with Mrs. Fulford for a repossession of the cattle by Gould & Co. and made an oral agreement with Mrs. Fulford that she would care for the cattle under the same arrangements as previously existed until a new contract of purchase should be entered into, it being intended and agreed between the parties that the contract of December 7, 1933, should be forfeited, the cattle repossessed by Gould & Co., and the herd cared for by Mrs. Fulford as the plaintiff's cattle until a new conditional sales contract should be entered into. On December 27, 1933, such new contract was entered into between Gould & Co. and Iva Pearl Fulford. The terms of the two contracts were identical. The conditional sales contract of December 27, 1933, was properly filed for record in the office of the Auditor of Whatcom county on that date.

"(14) The Golden Rule Trading Company took a

second mortgage on the said dairy herd from Samuel H. Fulford for $2,000 about the same time he gave the first mortgage to the Citizens State Bank. Said Fulford did not pay this mortgage indebtedness and in March, 1934, the said Golden Rule Trading Company, having assigned the Fulford note and mortgage to the Pacific Mercantile Agency, Inc. for collection, an action was brought on the note by the collection agency and on April 21, 1934, judgment was obtained against Fulford for more than $3,000. The action was on the note. No proceedings being taken on the second mortgage. The Pacific Mercantile Agency, Inc., levied execution against the Fulford dairy herd for the collection of its judgment. This was the same dairy herd owned by the plaintiffs, and sold under conditional sales contract to Iva Pearl Fulford. Gould & Co., learning of the execution against the dairy herd on or about April 27, 1934, demanded of the Sheriff of Whatcom county and the Pacific Mercantile Agency, Inc., and its manager, H. T. Morton, that the herd be released from the execution, and on April 30, 1934, Gould & Co., acting through its attorney, A. H. Ward, and the Pacific Mercantile Agency, Inc., acting through its attorney R. W. Greene, and its manager, H. T. Morton, had conference at Bellingham, Washington, in the office of the said R. W. Greene, at which conference the various claims of the respective parties under the said conditional sales contracts and the levy and execution were discussed. Thereafter on May 1, 1934, said Pacific Mercantile Agency, Inc., obtained from the said Samuel H. Fulford and Iva Pearl Fulford a chattel mortgage upon the said dairy herd for $2,000, and thereafter had the sheriff release the same from execution. The mortgage of $2,000 was taken in consideration of the judgment obtained by the said Pacific Mercantile Agency, Inc., on the Golden Rule Trading Company indebtedness, and the said judgment obtained on the said claim was satisfied of record upon obtaining this chattel mortgage for $2,000. There was no other consideration for the said mortgage.

"(15) On the same date the mortgage was obtained, May 1, 1934, Pacific Mercantile Agency, Inc., endorsed the note and assigned the mortgage to the defendant

Mount Baker Savings and Loan Association. The consideration for this assignment was a pre-existing indebtedness owing to the Mt. Baker Savings & Loan Association by a corporation other than the Pacific Mercantile Agency. The Pacific Mercantile Agency, Inc. was not indebted to the Mt. Baker Savings and Loan Association at the time the assignment of the chattel mortgage was made by it to the Mt. Baker Savings and Loan Association, and there was no consideration whatsoever passing from the Mt. Baker Savings and Loan Association to the Pacific Mercantile Agency, Inc. for the assignment of the chattel mortgage.

"(16) The Mt. Baker Savings and Loan Association was not at the time it took the note and mortgage by assignment a bona fide purchaser thereof and it is not now a bona fide holder in due course of the note and mortgage and its right, title, and interest in and to the said dairy herd under the chattel mortgage is no better than that of the Pacific Mercantile Agency, Inc.

"(17) That on May 3, 1934, the plaintiff served on the said Fulfords and on the Mt. Baker Savings and Loan Association and on the Pacific Mercantile Agency, Inc., the notice of forfeiture of the conditional sales contract marked 'Exhibit B' and attached to the plaintiff's amended complaint and thereafter on May 31, 1934, the plaintiff Gould & Co. and the defendants Samuel H. Fulford and wife entered into the agreement marked 'Exhibit 1' and attached to the answer and cross complaint of the defendant H. T. Morton, and under the terms of this agreement, said Samuel H. Fulford and wife now have the dairy herd in their possession near Van Zandt in Whatcom county, Washington.

"(18) The bill of sale from the Sheriff of Whatcom county, Washington, to Gould & Co., dated November 28, 1933, was not filed for record within ten days and the agreement between Gould & Co. and the Fulfords, dated May 31, 1934, was not filed for record at all.

"(19) That on or about May 8, 1934, the plaintiff commenced this action against the Pacific Mercantile Agency, Inc., and the Mt. Baker Savings and Loan Association to enjoin them from making any further

transfer or assignment of the chattel mortgage dated May 1, 1934. Thereafter on May 17, 1934, the said H. T. Morton secured from the said Samuel H. Fulford and wife another note for $500 and a chattel mortgage on the said dairy herd securing the note, the same being filed on May 21, 1934, under Auditor's File No. 430713. This mortgage was given to 'H. T. Morton, Trustee.' Said Morton claimed to have taken this mortgage as trustee for certain general creditors of the Fulfords and to procure money for Attorney R. W. Greene in certain contemplated bankruptcy proceedings for the said Fulfords. At the time the said H. T. Morton took the mortgage, he was not authorized by any of the creditors to act as their trustee except by his attorney, R. W. Greene. One of the creditors he claimed to act as trustee for was Gould & Co., the plaintiff. There is no proof of any indebtedness now owing to any of the claimed creditors.

"(20) Said H. T. Morton now holds this $500 note and mortgage and Mt. Baker Savings and Loan Association now holds the $2,000 note and mortgage dated May 1, 1934.

"(21) The Golden Rule Trading Company, the Pacific Mercantile Agency, Inc., and H. T. Morton at the time these chattel mortgages were obtained from the Fulfords, knew of all of the facts hereinbefore recited. They knew of the original mortgage to the Citizens State Bank of Ferndale. They knew of its purchase and assignment to Gould & Co. They knew of the foreclosure of the chattel mortgage by Gould & Co. and of the purchase of the dairy herd by Gould & Co. in the foreclosure sale. They knew of the conditional sales contract between Gould & Co. and Iva Pearl Fulford on December 7, 1933, and of the second conditional sales contract on December 27, 1933. Attorney R. W. Greene was acting as attorney for both the Pacific Mercantile Agency, Inc., and the said H. T. Morton in all of these transactions subsequent to the demand made by the plaintiff on April 27, 1934, for the release of the herd from the execution levied by the Pacific Mercantile Agency, Inc., and the said attorney, acting for his said clients, made an examination of all of the records concerning the dairy herd

in the office of the Auditor of Whatcom county and all of the records in the Sheriff's office of the foreclosure of the chattel mortgage and as a result of this examination and a conference with the plaintiff, the said H. T. Morton and Pacific Mercantile Agency, Inc. were cognizant of all of the facts and transactions that had taken place as aforesaid concerning the dairy herd.

"(22) That the plaintiff Gould & Co. is the owner of the dairy herd now on the farm owned by Iva Pearl Fulford near Van Zandt, Washington. That neither the Pacific Mercantile Agency, Inc., the Mount Baker Savings and Loan Association, nor H. T. Morton have any right, title, or interest in and to the said dairy herd under and by virtue of the chattel mortgages made by the said Samuel H. Fulford and Pearl Iva Fulford on May 1, 1934, and May 17, 1934, respectively."

Upon these findings, the court entered a decree adjudging the plaintiff to be the owner of the dairy herd, and that its title thereto be quieted as against all claim of the defendants, and that the chattel mortgages, held by the defendants Pacific Mercantile Agency, Inc., and H. T. Morton, referred to in the findings, be adjudged to be of no force or effect as against the title of the plaintiff. The defendants appeal.

The appellants assign thirty-seven errors, most of them challenging the findings of fact.

The first and principal contention of the appellants is that the chattel mortgage foreclosure by notice and sale, through which respondent claims title to the dairy herd, was void and ineffective, (1) because of the failure of the sheriff to comply with statutory requirements in the process of foreclosure, and (2) because of the fact that the cattle were left in possession of the owner while the foreclosure was pending—that there was not such a physical seizure as the law requires to make the levy and sale effective.

In its twelfth finding, the court found that the levy and seizure made by the sheriff were sufficient, and that all the proceedings connected with the foreclosure were in compliance with the provisions of the statute, and that, by virtue of the sale, the respondent became vested with title to the herd. The record, as brought here, is, for the most part, silent as to the several steps taken by the sheriff.

At the trial, Joseph H. Dunn, called as a witness by the appellants, testified that he was a deputy in the sheriff's office at the time of the foreclosure and had with him in court the original foreclosure proceedings. The original notice of foreclosure was stamped as received by the sheriff's office on November 14, 1933. The notice of sale was posted the next day, November 15, and the sale set for November 28 at the Fulford farm in Whatcom county. The sale was held November 28, 1933, and the respondent, as purchaser, was given a bill of sale by the sheriff. The notice of chattel mortgage foreclosure was served on Fulford, the owner of the cattle, and a custodian agreement was signed by him and by the attorney for the respondent.

While Dunn was on the witness stand, this colloquy, between the court and attorneys, occurred:

"Mr. Greene: These are all in the record down there and I haven't had certified copies made. If that is necessary they can be made. The Court: I think if it becomes necessary there should be some copies made of the entire proceeding. Mr. Ward: There are two copies. Mr. Greene: They have them stamped and they won't let anything go from the sheriff's office. Mr. Ward: I have got a copy of that. Mr. Greene: We can put the copies of all this record in by agreement. The Court: If this becomes material on appeal. Mr. Ward: I understand the ruling of the Court is if this becomes necessary and he deems it material that he will treat the entire sheriff's record as introduced. The Court: Yes, it will have to be offered

some way or other and be considered a part of this record. MR. GREENE: It is not so stipulated. MR. WARD: It is not stipulated by us. If you use it, use it all. MR. GREENE: A certified copy can be put in.''

From this, it would appear that the court considered the original sheriff's records as being before him for consideration, although no copy of them appears in the record before us. They were brought into court by the appellants, with the tacit consent that they be considered by the trial judge and a certified copy supplied if necessary. As the sheriff's office would not consent to the originals being left in court, the burden was upon appellants to supply a copy for the record. In the absence of a copy, we must assume that they sustained the court's finding.

In *National Surety Co. v. Fry Co.*, 86 Wash. 118, 149 Pac. 637, it is said:

' ''There is another consideration which also tends to support the court's finding that the Fry & Company writ was actually levied. Its writ was delivered to the sheriff for the purpose of levy, together with the bond of indemnity, for his protection in making the levy. It thereupon became the sheriff's duty to make the levy and, in the absence of proof to the contrary, there is a presumption that the officer performed his duty. We think, therefore, that, aside from any presumption raised by the findings and judgment in the original suit, there was evidence sufficient to sustain the finding of the court that the Fry & Company writ was actually levied, and that the goods were being held thereunder at the time of their destruction.''

The rule is stated in 4 C. J. 736, as follows:

''On a partial or incomplete record, the appellate court will presume any conceivable state of facts within the scope of the pleadings and not inconsistent with the record which will sustain and support the ruling or decision complained of; but it will not, for the purpose of finding reversible error, presume the existence of facts as to which the record is silent. Thus in sup-

port of the ruling or decision complained of, it will be presumed, on appeal, as to matters not fully disclosed by the record, that public officials performed their duty; that statutory requirements were complied with; . . . ''

██ Touching the objection that the herd was left in possession of the owner pending foreclosure, the evidence supports the tenth finding, that Fulford, the owner, agreed to act as custodian or keeper for the sheriff and to deliver the herd to him when called for. In 17 R. C. L. 237, the rule is stated:

''While retention of the possession of property levied on is ordinarily deemed to be essential to the continuance of an attachment or execution lien, levying an execution or attachment and taking a receiptor change the possession of goods in the contemplation of law without an actual removal. The giving of receipts for property attached is not only lawful everywhere between the parties to them, but the law encourages such transactions, in order to save litigants the trouble and expense attending the keeping of property attached by the sheriff, while the case is waiting for trial.''

While the appellants urge that the statute required the taking of manual possession of the property, they do not explain the process by which manual possession, in a literal sense, could be taken of a herd of thirty-three dairy cattle. The law can require only what is reasonably practicable in relation to the property to be attached.

In this case, the sheriff had to take into possession a dairy herd, required to be guarded, tended, fed and milked daily. It would seem that he did the reasonable thing under the circumstances. He had Fulford's definite agreement in writing that he would care for and hold the herd during the foreclosure proceedings and surrender the cattle upon the order of the sheriff. We have been cited no case in our own court like the

one before us, but in *Monks & Miller, Inc. v. Fein,* 125 Wash. 230, 215 Pac. 525, the court inferred that the course followed here would be approved. There, the sheriff levied an execution on some movable personal property belonging to one Emmons, and left the property in his possession. The court reviewed at some length the testimony in relation to the agreement had with Emmons, and, reaching the conclusion that the property was capable of the ''manual delivery'' and ''taking into custody'' required by the applicable statutes, held them to mean literally what they say. However, the court proceeds:

''This, of course, does not mean but that a sheriff, armed with an execution or attachment, may not, by his agent, take and hold the property and thus make such agent's possession his possession. But, noting the facts of this case as disclosed by the testimony above quoted, we think it cannot be said that Emmons ever became the agent of the sheriff for the holding of this property. We do not overlook the words of Emmons as testified to by the deputy that 'It wouldn't be moved, it would be there, it would be safe with him;' but even that, we think, cannot be construed as a promise on the part of Emmons that he would hold the property for the sheriff. Manifestly, Emmons contemplated the holding of the property for himself. So we think it cannot be said that the possession and enjoyment of the property of Emmons, to the extent which he desired to possess and enjoy it, were in the least impaired or interfered with by the deputy in his claim of levy upon it.''

The court quoted with approval from *Hopke v. Lindsay,* 83 Mo. App. 85:

''To effect (sic) personal property with a lien of an execution, the officer must take that degree of manual possession of the subject-matter of his levy which the nature of the property renders practicable. If it can not be actually seized, he must take what possession he can, and evidence his seizure by posting notices on the

property that it is levied on, or by attaching to it some other marks indicating the special property vested in him by his levy.''

Also, in the case of *Cupples v. Level,* 54 Wash. 299, 103 Pac. 430, 23 L. R. A. (N. S.) 519, where the court held an attempted levy ineffective, it is said:

"The return does not show that the sheriff went upon, or even saw, the property; nor did he constitute the judgment debtors, or either thereof, or any other person, his agent to keep possession of it.''

Here, the sheriff undoubtedly "took that degree of manual possession of the subject-matter of his levy which the nature of the property renders practicable.'' The notices were posted and a definite agreement had with Fulford for the custody of the property, as keeper for the sheriff, and its surrender when called for.

Our conclusion is that the foreclosure proceedings were regular and, as found by the trial court, transferred title to the dairy herd to respondent. This conclusion disposes of most of the other assignments of error.

Appellants seek to found some right on the failure of notice to the Golden Rule Trading Company, which held a second mortgage on the herd. This mortgage was given by the owner about the time of the execution of the first mortgage, and the debt secured by it was evidenced by a note. After the foreclosure, the note was assigned for collection to the Pacific Mercantile Agency, which sued the Fulfords and secured a personal judgment against them for the amount of the note, with interest. Thereafter, the Fulfords were told by Morton, manager of the Pacific Mercantile Agency, that his attorneys had investigated the foreclosure proceedings and found them irregular and void, and he induced them to execute a chattel mortgage on the herd in favor of the Pacific Mercantile Agency for two

thousand dollars, in consideration of the satisfaction of the judgment obtained on their note. This mortgage, about the time of its execution, was assigned by the Pacific Mercantile Agency to appellant Mt. Baker Savings & Loan Association to secure a pre-existing debt of the Pacific Loan Company, a corporation also managed by Morton.

In addition to the mortgage to the Pacific Mercantile Agency, the Fulfords also gave a chattel mortgage on the herd to Morton to secure a note for five hundred dollars. Morton testified this note and mortgage were taken by him as trustee for certain creditors. It will be noted that the court found that Morton did not represent the creditors for whom he professed to act as trustee.

In any event, the record establishes, and the trial court found, that all of these transactions, accruing subsequent to the respondent's foreclosure, were had with notice of the foreclosure and the respondent's claim of title under the sheriff's bill of sale.

The appellants can claim no right under the chattel mortgage given to the Golden Rule Trading Company, because, while the note secured by the mortgage is the basis of their claim, they have not succeeded to any rights under the mortgage. This was not assigned to the Pacific Mercantile Agency at the time of the assignment of the note. So far as the appellants are concerned, they succeeded only to the rights of the Golden Rule Trading Co., as a general creditor of the Fulfords.

It is next contended that the sheriff's bill of sale to the respondent was void as against existing creditors of the Fulfords, because it was not filed for record in the auditor's office within ten days, as required where the property conveyed is left in the possession of the grantor. The appellants cite no au-

thority sustaining their contention that the bill of sale executed by a sheriff upon foreclosure is within the statute.

"While there is contrary authority, the weight of authority is that judicial sales constitute an exception to the general rule requiring a change of possession on the sale of personal property to make the sale valid as against creditors; and where the sale is otherwise fair and unimpeached, fraud is not inferred from the fact that the debtor is permitted to remain in possession of the property." 27 C. J. 591.

In an Idaho case, where the facts were essentially like those in the instant case, on this question the court said:

"If respondent had claimed the hogs in question by virtue of a sale from Warren Sweeten to himself and had left them in Warren's possession, then, according to the statute above cited, the *bona fides* of the transaction might well be questioned, but as respondent obtained his title, not through Warren Sweeten, but through a judicial sale made by the sheriff of Oneida county upon a writ of execution, the above cited statute does not apply." *Sweeten v. Ezell,* 30 Idaho 154, 163 Pac. 612.

In any event, Fulford was not in possession of the cattle in the sense of having dominion over them, but as agent for the sheriff. When the sheriff delivered his bill of sale to the respondent, he yielded dominion to the respondent and ceased to hold in virtue of his attachment. With the sale, possession was given to respondent.

The appellants make several other contentions which we deem without merit, and no purpose would be served by their discussion. The respondent held, and foreclosed, what was admittedly a first mortgage on the dairy herd. The appellants' liens, whatever they were, were acquired subsequent to the foreclosure sale, and with full notice of it.

Reading the voluminous and confused record, we reach the conclusion that the court correctly decided the case, and its judgment will, therefore, be affirmed.

MITCHELL, STEINERT, TOLMAN, and BLAKE, JJ., concur.

[1]Reported in 53 P. (2d) 848.